**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **VOTA INC.**<br><br>Plaintiff<br><br>**v.**<br><br>**URBAN EDGE CAGUAS LP ;**<br>**URBAN EDGE PROPERTIES**<br><br>Defendants | Civil No.:<br><br><br>**RE:** Civil Action:<br>Diversity; Breach of Contract<br>P.R. Local Torts Law Art. 1802, et seq.;<br>Tortious Interference with third party<br>agreement; Tortious interference by Wrongful<br>Conduct with Corporate Governance;<br>Equitable Emergency remedies under<br>COVID19 |

**COMPLAINT**

**TO THE HONORABLE COURT:**

**COMES NOW**, Plaintiff VOTA INC. by its undersigned attorney who respectfully states and prays:

**I.      THE PARTIES**

1. The Plaintiff **Vota Inc.**  is a domestic for profit corporation qualified to do business in Puerto Rico.

2.  The Defendant **URBAN EDGE CAGUAS LP**.  is a foreign Limited Partnership, [not registered in Puerto Rico], incorporated in the jurisdiction of Delaware, in October 16th, 1988 under Company Number 2956657, with address: Corporation Trust Center, 1209,

Orange St. Wilmington, New Castle, DE, 19801, and designated agent: The Corporation Trust Company.

3.  Defendant's controlling company is **URBAN EDGE PROPERTIES** in the same address.

4.  Plaintiffs are informed and believe and thereon allege that Defendant URBAN EDGE CAGUAS LP operates, manages and controls, and is a managing agent of the owners for the Shopping Center Catalinas Mall, including by creating or implementing policies for the operation of the Shopping Center and the advertisement of the Shopping Center through websites, including reduced operating hours, and restrictions on the operation of the Shopping Center such as limitations on the number of entrances to the Shopping Center, restrictions on and closures of common areas and amenities, and the creation and implementation of a Curbside Pickup Program intended to eliminate foot traffic in the Shopping Center.

5.  Plaintiff is further informed and believes and thereon alleges that URBAN EDGE CAGUAS LP controls the leasing of the Shopping Center's premises.

6.  Plaintiff is informed and believes and thereon alleges that Defendant URBAN EDGE PROPERTIES is an affiliate of URBAN EDGE CAGUAS LP, and an indirect owner of, and a recipient of a financial benefit from the leasing and operation of, the Shopping Center Catalinas Mall, and has operated, managed, and indirectly owned the Shopping Center.

## II.  INTRODUCTION

1. The COVID-19 pandemic has presented unique and unprecedented circumstances that were unforeseeable—indeed, unimaginable—at the time the lease between Tenant and

Landlord was executed. This disease is highly contagious and its spread has been rapid. International, State and local governments' reactions have been profound, varied, and constantly evolving, and prevented Tenants from opening their doors for months.

2. To protect the health and safety of their employees, customers, and the surrounding communities, and comply with applicable law, all Tenants at the Catalinas Mall, Caguas, Puerto Rico were required to close their stores and keep them closed for extended periods of time. Like innumerable other companies, **Vota Inc**. was required to make the difficult decision to furlough its restaurant employees to preserve their finances while revenue from the stores dropped to zero overnight.

3. Even now, as government restrictions ease for some activities and types of businesses but not others, the disease remains virulent, and extensive guidelines are required to be followed that may provide some measure of protection, but radically changed the shopping experience for a long time to come. Indeed, the shopping experience in physical stores will look nothing like what was contemplated by the leases when they were executed.

4. Furthermore, the experience of eating at The Food Court in particular, is one of the riskiest of all because you have to take off your surgical/protective mask off and be vulnerable to this disease and the surrounding people at the mall.  In a world of unforeseeable events, the circumstances stores have faced are at the extreme end of uncertainty.

5. These circumstances not only imposed a severe and irreparable hardship on Tenant, they frustrated the core purpose of the lease and made their principal object illegal, impossible, and impracticable, all for a period of time that remains unknown and

unknowable. Reopening this small restaurant, not only poses a risk to employees and customers, but a potential for liability from Tenant and even Landlord by these groups of civilians.

6. Thus, the subject lease and applicable law nullified any obligation to pay rent beginning on March 15, 2020 first lockdown, that entitles Tenant to a refund of rent and expenses paid in advance from March 15, 2020, and requires that the Lease be prospectively and drastically <u>modified, or rescinded, canceled, or terminated as a matter of law.</u>

7. Accordingly, Tenant seeks a determination of their rights and obligations under their lease, including a determination that Tenant owes no additional money to their Landlord, that the landlord owes money to Tenant, that Tenant is entitled to reformation of their Lease, and that Tenant is entitled to attorney fees and expenses incurred in connection with this action.

### III.      JURISDICTION AND VENUE

1. This Honorable Court has jurisdiction over the parties and the subject matter of this litigation pursuant to 28 U.S.C. Sec. 1332, inasmuch as there is complete diversity of citizenship between the Plaintiff and the Defendants and the amount in controversy, exclusive of costs and interests, exceeds seventy-five thousand dollars ($75,000.00).

2. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(a) since the claims alleged arose in this judicial district. This jurisdiction is where the contract was signed and the expected performance was in Catalinas Mall, Caguas and a clause for selection of this jurisdiction was included.

3. There is Supplemental jurisdiction under Federal Question in this complaint since the triggering of the events that lean the scale towards Landlord were a series of actions that can be construed as non-compliance with CDC guidelines[1] , violations to OSHA regulations[2] set forth for COVID19 and the Puerto Rico Executive Orders[3] that draft the specific ways to do business during COVID19 pandemic. Given the level of control Landlord has over the sanitary conditions of the Food Court tables, required social distance and occupancy limit, it's the Landlord's responsibility to prevent liability related to any visitor's claims upon us. There is an additional torts and damages claim under Puerto Rico Civil Code Article 1802, 31 L.P.R.A. Sec. 5141, *et. seq.*

4. URBAN EDGE CAGUAS LP or URBAN EDGE PROPERTIES don't have presence in Puerto Rico nor an office to physically reach them for a face-to-face meeting, failing their obligation to service their tenants, employees and customers. Co-defendants have a major problem by being unreachable, unavailable, not nearby, not within the jurisdiction of Puerto Rico.

## IV. GENERAL ALLEGATIONS

### A. Breach of Contract while in a World-Wide Emergency

1. Breach of contract was displayed by Defendants in implementing their policy under bad-faith and an <u>unreasonable denial of rights</u>[4] when **Vota Inc.** moved forward to inform them the sale of their corporation **Vota Inc.** to a third party, and Defendants prevented it in clear constraint of Plaintiff's corporate governance liberties.  (SEE ATTACHMENT I – Lease Contract)

---

[1] Centers for Disease Control and Prevention Coronavirus (COVID-19) Website https://www.cdc.gov/coronavirus/2019-ncov/index.html

[2] Occupational Safety and Health Administration COVID-19Website https://www.osha.gov/SLTC/covid-19/
[3] Puerto Rico Executive Orders (COVID19) https://www.estado.pr.gov/en/executive-orders/

[4] Interference; Wrongful Conduct. *C.R. England v. Swift Transportation Company*, 437 P.3d 343-348 (Utah 2019)

2. At this stage of no return, the **Rebus sic stantibus** doctrine[5] or – change in circumstances that exceptionally justify deviation from the doctrine of *pacta sunt servanda*- applies to rescind the lease contract in the chaotic situation we are living in.  This extraordinary remedy even though not usually applied in Puerto Rico, can now be applied. This doctrine applies whenever a disproportion between obligations, due to extraordinary and unforeseeable changes after the execution of a contract, rises to the level of bad faith and renders fulfillment of an obligation exceedingly onerous for one party [6] .It is also well settled that extending the scope of obligations to events and circumstances which a party would not have accepted if foreseeable goes against principles of good faith[7].

3.  This pandemic is a *Force Majeur [8]*, or -Act of God- and **Vota Inc.** claims defense against any alleged default during lockdown and should be relieved from its contractual obligations after this unforeseeable COVID19 circumstances beyond anyone's control that prevented or delayed fulfilling its obligations under contract.

4.  While waiting in vain for consideration of Landlord's acquiescence of this qualified buyer **Vota Inc.** lost him for the undue and unreasonable restrictions of alleged default[9] and the unreasonable timeframe needed, being delayed under the confusing terms purported as an assignment of lease instead of a corporate sale transfer[10], Section 10.01 *et seq*.

---

[6] Banco Popular v. Sucesión Talavera, 174 D.P.R. 686 (2008);
[7] Casera Foods v. E.L.A., 108 D.P.R. 850, 855 (1979).
[8] While most "*force majeure*" contractual provisions are unlikely to list disease, pandemics or government-ordered quarantines, many include general provisions covering natural disasters, "acts of God," or other circumstances beyond a parties' control.  In fact, under Puerto Rico law, a party to a contract is not liable for unforeseen events or those events that can be foreseen but are inevitable.
[9] As of today, Landlord alleges Vota Inc. owes an amount equal to $75,400.00 in rent and utilities since April 2020.
[10]  Defendants pretended to make Vota Inc. wait between 150 to 365 days for an answer.

5.  Through all these years, **Vota Inc.** was subjected to an <u>adhesion contract</u>, in which Landlord tried to eliminate in Section 2.05 *Force Majeur* protections as a matter of law, and didn't create a balance of considerations for compliance. This contract is one-sided and doesn't establish any obligations from Landlord to Tenant. This adds up to the elements to be considered by Court to rescind and nullify the lease as a whole.

**B. The Torts and Damages**

6. Our additional Torts and damages claim [11] comes from URBAN EDGE CAGUAS LP and URBAN EDGE PROPERTIES wrongful conduct. By intentionally preventing the acquisition of **Vota Inc**. after timely notifying intent on June 11th  2020  of their qualified third party buyer ["Creolo Foods"] and sent all supporting documents by July 8th, 2020.

7. **Vota Inc.'s** candidate- buyer was rejected *ab initio* allegedly for **Vota Inc**. being in default during the lockdown.[12] Co-defendants didn't even put in motion the provisions set forth in Section 10.01 of the contract to review the buyer qualifications, unreasonably withholding consent [13].

8. The resulting damages caused by withholding consent wayward unreasonably to a sale authorization, sent **Vota Inc**. downhill since this small business operated on such small margins that they didn't survive the pandemic recession and <u>had to file for bankruptcy</u>. This independent cause of hardship, in addition to the COVID19 pandemic, is clearly identifiable.

 (SEE ATTACHMENT II- Bankruptcy Case File Certif. Automatic Stay 20-04434-7)

---

[11] Plaintiff's damages related to co-defendants' inaction and risk-loss are contemplated under Article 1802, the Puerto Rico Civil Code's negligence provision. 31 P.R. Laws Ann. § 5141.

[12] Lease Contract- Section 9.02 Continuous operation -Tenant shall remain open during the entire term ( business hours) <u>when shopping center is open</u>. Tenant's tradename. Throughout the term, tenant shall not, at any time, abandon, leave vacant, or desert the premises, or any part thereof. []...except to the extent prevented from doing so by strikes, fire, <u>casualty or other unforeseeable  causes beyond tenant's reasonable control other than lack of funds ...[]</u>

[13] Lease Contract- Article X Transfer of interest, priority or lien; Section 10.01 Assignment, Subletting

9. Plaintiff seeks an equitable analysis and intervention from Court to apply on Landlord-Tenant Law and Commercial Reasonability. The "commercially reasonable" standard is commonly used by Courts through a <u>balancing test</u> in which the court will balance commercial reasonable and unreasonable factors to determine whether the landlord has refused an acquisition or assignment based on commercially reasonable or commercially unreasonable factors.

10. Since the candidate-buyer is no longer interested for the undue delay caused by codefendants, <u>Plaintiff seeks compensation for torts and damages for third party interference, corporate freedom constrain and on the dissolution of the corporation and bankruptcy damage</u>.


## IV. FACTUAL ALLEGATIONS


1. On March 21, 2013, Plaintiff  Vota Inc. and Vornado Caguas LP signed the lease contract for which (hereinafter "Vota") rented the  Demised Premises[14] in Catalinas Mall.

2. The foregoing lease contract lasts ten (10) years from April 1st, 2013 to March 31, 2023.

3. It is believed that Vornado Caguas LP assigned the Landlord rights to the lease to URBAN EDGE CAGUAS LP.  Vornado Caguas LP is registered in Delaware under registration number 2956657, according to the official registry, and it is now of unknown status.

4. Plaintiff and URBAN EDGE CAGUAS LP are parties to lease for Premises in the Catalinas Mall Shopping Center (the "Lease") under which Plaintiff has operated Vota

---

[14] DEMISED Premises- 679 square feet of floor area (Store Number FC190)

Inc. doing business as  "Casa Mofongo Xpress" [15] , which is a restaurant, located at the Food Court specialized in  Caribbean-Puerto Rican-latin-cuisine.

5.   The express purpose of the Lease was to provide Tenant with commercial space suitable for the operation of this fast food restaurant at the Food Court.

6.   The Lease's language states that the leased premises shall be used and occupied only for the permitted purpose -sale of the pre-authorized food menu offered as Tenant's business plan-, and Tenant may sell this food at the premises and for no other use or purpose.[16]

7.   At the time the Lease was entered into, the purpose of the Lease was understood and intended by both Tenant and Landlord (or their predecessors).

8.    If not for the ability to operate a store at the Premises for the sale of their food menu, Tenant would not have entered into the Lease. Indeed, Tenant's ability to operate this particular fast food restaurant at the Premises was the sole consideration Tenant received in exchange for entering into the Lease. All other nominal benefits of the Lease being a part of, and subordinate are ancillary to that consideration. Without the ability to operate this particular restaurant at the Premises, the transactions between Tenant and Landlord that were embodied in the Lease make no sense.

9.    Catalinas Mall reopened in June 1st, 2020.  The lack of information, guidance and specific instructions as to how to proceed to prevent positive COVID19 cases inside the restaurant and out at Food Court and other protocols when confronted with positive COVID19 cases, where absent. The liability was too high to reopen.

---

[15]  **Casa Mofongo XPress** is a franchise dully acquired by Vota Inc. to J&M Management, now: C.M. Holding Group Inc.  Vota Inc. was doing business as "Casa Mofongo Xpress" before closing [Transactional Agreement under Civil No. D AC2017-0598].
[16]  Lease Contract-Article IX USE AND OPERATION-Section 9.01 Tenant shall use the demised premises only for the permitted use and for no other purpose. (Exhibit F – Food Court)

10. Vota Inc. warned Co-defendants that their general protocol allegedly based on CDC guidelines, and Puerto Rico Executive Orders was <u>incomplete</u>.[17]

11. All warning signs for distancing were in English, personnel in the entrance used at-random screening, no supervision on compliance was displayed from the administration of their employees and customer-civilians, and the Food Court in particular didn't have an independent check-point, as do Executive Orders mandate to all restaurants limited restrictive capacity (%).

12. There is still no independent entrance to the Food Court from outside the Mall. The Pickup Curbside can't be used for the Food Court, hence, <u>making no sense</u>. This is still an obstacle that affected **Vota Inc**. and is still affecting sales for other Tenants.

13. Co-defendants herein failed to timely comply with their duty to mitigate and allow **Vota Inc's** corporate freedom for the acquisition to be performed smoothly between buyer and Plaintiff. This can be construed as forcing Tenant into default.

14. In utter frustration, **Vota Inc**. decided to write letters and participate in conference calls with Paul Schiffer[18] with the same request in each and every one of them:  to drastically adjust and modify rent, and/ or to rescind this contract. As reply, Vota Inc. continued receiving a negative feedback. This led for attorney intervention between parties.

15. Plaintiff claims to recover monetary damages and other relief available under local and federal law and in equity on behalf of the corporation **Vota Inc**. for being victimized during this COVI19 emergency, leading Vota Inc. to a dead-end, hence suffering a closing and bankruptcy that could've been prevented by the timely acquisition authorization needed from Co-defendants.

---

[17] Vota Inc. from May 26th, 2020 to June 23rd, 2020  e-mailed Lineth Rosado with (9 to 11) CDC requirements their protocol lacked.
[18]  URBAN EDGE CAGUAS and URBAN EDGE PROPERTIES leasing agent.

16. In the event Co-defendants are found to be responsible for a knowingly or intentional breach of contract, holding  unto corporate freedom and rights and related torts and damages and deny responsibility for the damages caused to Plaintiff, due to such an obstinate and temerarious denial, Plaintiff would then be entitled to an award of prejudgment interest, to be computed from the amount finally adjudged, plus a reasonable money amount for attorney's fees, costs of suit, including costs of notice, administration, and expert witness fees.

17.  The Plaintiff requests a jury trial for all triable issues.


## VII.    PRAYER FOR RELIEF

**WHEREFORE**, it is respectfully requested that Judgment be entered by this Honorable Court in favor of the Plaintiff declaring the alleged rent debt as Co-defendants'  sole responsibility, given the inactions and violations and breach of contract, rescind and nullify the Tenant- lease contract and jointly and severally against the co-defendants:

A. Injunctive relief and protections against co-defendants' possible action against Plaintiff of "any legal proceeding that may lead to a claim for money collection to personal guarantors".

B. Imposing upon the co-defendants the payment of all costs and expenses to be incurred in this lawsuit.

C. Imposing compensation under breach of contract, for unreasonable burden caused by denying the acquisition of **Vota Inc**. and all corresponding local Torts and Damages plus monetary relief under federal law in the amount of one million dollars $1,000.000.00.

D.  Granting Plaintiff any other relief that he may be entitled to as a matter of law.

E.  And, in the event the co-defendants deny liability, awarding Plaintiff pre-judgment interest, plus a reasonable money amount for attorney's fees.

**RESPECTFULLY SUBMITTED** by party through their counsel, in San Juan, Puerto Rico, this 12th day of November, 2020.

November 12th, 2020
Date

/s/ Atabey Lamela Gandía
USDC-PR No. 229612
P.O. Box 194829
San Juan, P.R. 00919-4829
Telephone: (787) 960-7780
lcda.lamela@hotmail.com