THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **VOTA INC.**<br><br>  Plaintiff,<br><br>  v.<br><br>**URBAN EDGE CAGUAS L.P. el al.,**<br><br>  Defendants. | Civil No. 20-1634 (ADC) |

## OPINION AND ORDER

Pending before the Court is defendants' motion to dismiss. **ECF No. 15**. Plaintiff Vota, Inc. ("plaintiff") filed a response thereto, **ECF No. 20**, and defendants replied, **ECF No. 22**. Plaintiff did not move for leave to file a sur-reply.

For the reasons stated herein, the motion to dismiss at **ECF No. 15** is **GRANTED**.

**I.   Background**

On January 19, 2021, plaintiff filed a complaint against co-defendants Urban Edge Caguas, L.P., and Urban Edge Properties ("defendants" or "landlord") under this Court's diversity jurisdiction. **ECF No. 1** at 4.[1] Plaintiff prays for the Court to alter or declare void a lease

---

[1] Plaintiff attached two documents to the complaint. **ECF Nos. 1-1, 1-2**. Although the complaint purports that the Lease Agreement was submitted at **ECF No. 1-1**, the reality is that plaintiff's **ECF No. 1-1** only contains a professional service agreement. The Lease Agreement was submitted by defendants at **ECF No. 15-1**. Because the Lease Agreement is a document "central to plaintiff's claims" and "sufficiently referred to in the complaint" it falls within the "narrow exception" that allows the Court to entertain it without converting a motion to dismiss into a motion for summary judgement. *Freeman v. Town of Hudson*, 714 F.3d 29, 36 (1st Cir. 2013) (citing *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)).

agreement executed between the parties to this case, seeks damages caused by defendants' alleged breach of contract, and damages under Puerto Rico's general tort statute. PR Laws Ann. tit 31, § 5141. *Id*.

### A.    The complaint

Plaintiff claims that on March 21, 2013 it executed a 10-year Lease Agreement ("Lease Agreement") with defendants[2] for a commercial space in The Catalinas Mall's ("Mall") Food Court in Caguas, Puerto Rico. **ECF No. 1** at 8. Plaintiff executed the Lease Agreement[3] in order to operate a franchise restaurant known as "Casa Mofongo Xpress". *Id*., at 9, n.15. According to the complaint, the Mall closed on March 15, 2020 due to Covid-19 restrictions and mandatory, state-wide lockdowns. *Id*., at 4. It reopened on June 1, 2020. *Id*. However, plaintiff thought the "liability was too high to reopen" due to the alleged lack of "guidance and specific instructions" to prevent the spread of the virus. *Id*., at 9.

Plaintiff also claims that defendants failed to "timely comply with their duty" and ultimately "prevented" plaintiff from completing the "sale of the corporation Vota Inc. to a third-party," Creolo Foods. *Id*., at 5, 10. Plaintiff asserts that it announced its intent to "sell" on June 11, 2020 and submitted to defendants all the necessary documents by July 8, 2020. *Id*., at 7. Plaintiff also claims that defendants rejected "*ab initio*" the "candidate-buyer" because of

---

[2] Formerly "Vornaro Caguas LP." **ECF No. 1** at 8-9.
[3] Although identified as the "Lease Agreement," plaintiff mistakenly submitted a professional service agreement at **ECF No. 1-1.** The Lease Agreement was submitted by defendants at **ECF No. 15-1**. Plaintiff did not challenge the authenticity of the Lease Agreement at **ECF No. 15-1**.

plaintiff's default under the Lease Agreement during the lockdown. *Id*. To wit, as of the filing of the complaint, plaintiff's allegedly have a debt for "rent and utilities since April 2020." *Id*., at n.9.[4]

Nonetheless, the complaint also states that defendants "withheld consent" and failed to comply with the Lease Agreement's Section 10.01, which allegedly required defendants to review the qualifications of the Creolo Foods as a "buyer." *Id*. "[B]y withholding consent" and not authorizing the "sale" of plaintiff's business to the third-party, defendants ostensibly forced plaintiff to file a voluntary petition for relief under the Bankruptcy Code. *Id*. Due to defendants' "undue delay," plaintiff alleges, the third-party buyer is no longer interested in acquiring plaintiff's business. *Id*., at 8.

Accordingly, in light of the Covid-19 changes, plaintiff requests the Court to enter an order declaring the Lease Agreement void or, in the alternative, to modify the Lease Agreement under the civil doctrine know as *rebus sic stantibus*, and to enter judgment for contractual or extracontractual damages in its favor, among other remedies.

Plaintiff filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6). **ECF No. 15**. Plaintiff filed a response at **ECF No. 20**, and defendants replied. **ECF No. 22**.

---

[4] Any issues related to plaintiff's purported debt, if any, is a matter under the United States Bankruptcy Code which is under the jurisdiction of the United States Bankruptcy Court following plaintiff's voluntary filing of a petition prior to the filing of the instant complaint. **ECF No. 1-2**.

**II.     Legal Standard**

It is well settled that in reviewing a motion for failure to state a claim upon which relief can be granted, the Court accepts "as true all well-pleaded facts alleged in the complaint and draw[s] all reasonable inferences therefrom in the pleader's favor." *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 52–53 (1st Cir. 2013) (citation and internal quotation marks omitted). Only "[i]f the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *S.E.C. v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (en banc).

The First Circuit established a two-prong test to evaluate "plausibility" under Fed. R. Civ. P 12(b)(6). *See Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) (discussing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). First, the court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." *Schatz c. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678-79.

Second, the court must then "take the complaint's well-[pleaded] (*i.e.*, non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." *Schatz*, 669 F.3d at 55. Plausible "means something more than merely possible." *Id*. (citing *Iqbal*, 556 U.S. at 678-79). To survive a Rule 12(b)(6)

motion, a plaintiff must allege more than a mere "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.[5]

## III. Discussion

### A. Breach of contract and contractual damages

Because defendants attack the complaint under Fed. R. Civ. P. 12(b)(6), the Court will gather and piece together the complaint's haphazard collection of allegations in the most favorable way for plaintiff.

**(i) Denial of "corporate rights"**

Plaintiff claims that defendants' actions "prevented" the "sale"[6] of Vota, Inc. to a third party, Creolo Foods. *See* **ECF Nos. 1** at 5-6. Without more, plaintiff asserts that defendants' actions "den[ied] [plaintiff's] corporate rights and liberties." **ECF No. 20** at 5.

Disregarding conclusory statements, the Court finds absolutely no factual allegations suggesting that defendants, as landlord, breached any part of the Lease Agreement by "prevent[ing]" plaintiff from selling Vota, Inc. to a third party. Plaintiff has never claimed there is any corporate relationship between defendants and plaintiff or that defendants hold any interest, voting rights or exert control over Vota, Inc. Thus, other than conclusory allegations,

---

[5] "[W]e realize too that we can consider (a) implications from documents attached to or fairly incorporated into the complaint, (b) facts susceptible to judicial notice, and (c) concessions in plaintiff's response to the motion to dismiss. *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55–56 (1st Cir. 2012)(quoting *Arturet–Vélez v. R.J. Reynolds Tobacco Co.*, 429 F.3d 10, 13 n.2 (1st Cir. 2005)(internal quotation marks omitted).

[6] Neither does plaintiff explain what the "sale" of Vota, Inc. entails. The Court does not know whether plaintiff alleges it was selling the business, the interest in his corporation, voting rights, or talking about a merger, joint venture or any other possible corporate transaction.

nothing in the complaint suggests that defendants have any control or power to actually "prevent" the sale of plaintiff's business. Aside from requiring landlord's consent to sublet or assign the lease to a third party, which is perfectly normal and common under Puerto Rico law, *see Llavat Cristy v. Pérez Pérez*, 15 P.R. Offic. Trans. 367, 1984 WL 270947 (P.R. Dec. 1984), plaintiff fails to point in the direction of any clause in the Lease Agreement that sustains its claim of a breach.

Even assuming, *in arguendo*, that defendants "prevented" the "sale" of Vota, Inc., the complaint fails to state well-pleaded factual allegations that "plausibly narrate a claim for relief." *Schatz c. Republican State Leadership Comm.*, 669 F.3d at 55. Nothing in the complaint explains what actions or omissions (aside from defendants' right to vet a request for subletting or assigning the lease) constitute a "den[ial] [of] corporate rights and liberties." **ECF Nos. 1** at 5-6; **20** at 5. Furthermore, nothing in the complaint resembles a factual allegation showing defendants' actions or omissions could be viewed as "prevent[ing]," figuratively or practically, the sale of plaintiff's business to a third party.

Taking a closer look into plaintiff's allegations, the Court notes that plaintiff explicitly anchored its breach of contract claims on the conduct "displayed by defendants in implementing their policy… when Vota Inc. moved forward to inform them of the sale of [its] corporation Vota Inc. to a third party, and defendant[s] prevented it." **ECF No. 1** at 5. The only part of the Lease Agreement cited in support, however, is Section 10.01. As discussed in more detail herein below, Section 10.01 deals with subletting and assignment of the lease. It is thus clear that plaintiff failed

to include allegations or a "plain statement" discussing the obligations or duty under the contract that defendants allegedly breached. Fed. R. Civ. P. 8(a). Therefore, sifting through conclusory allegations, the complaint fails to plausibly state a claim for breach of contract as it pertains to defendants' undisclosed actions or omission that "prevented" the "sale" of Vota Inc.

In any case, the Court further notes that the Lease Agreement states that if there is a "change in the present effective voting control of Tenant by the person or persons owning a majority of [] outstanding voting stock, membership interest, or a majority interest in the partnership, as the case may be… then such event shall constitute an assignment for the purposes of this Lease." **ECF No. 15-1** at 35. Notably, plaintiff does not challenge landlord's contractual right to vet the qualifications of the proposed assignee or third party interested in subletting. Even if it did, under Puerto Rico law, the right of a tenant to assign[7] its interest on a lease or sublet can be and are regularly subjected to landlord's reasonable consent. *E.J. Sportswear, Inc. v. Sucn. Martell*, 3 P.R. Offic. Trans. 572, 1975 WL 38844 (P.R. Feb. 20, 1975). Therefore, plaintiff did not include a single well-pled allegation stating facts to carry its claims from mere discontent with a provision of the Lease Agreement to a plausible claim for relief for breach of contract.

Reading the complaint in the light most favorable to plaintiff, the Court will now assume that by "sale" plaintiff meant to "assign" the lease or interest thereof to a third party. In other

---

[7] "[O]ur case law identifies the assignment with the sublease in these situations, but it being understood that the assignor is not relieved from his original obligations with the lessor." *E.J. Sportswear, Inc. v. Sucn. Martell*, R-73-346, 1975 WL 38844 (P.R. Feb. 20, 1975).

words, giving plaintiff the benefit of the doubt, the Court will also evaluate whether or not defendants breached the Lease Agreement by delaying or denying plaintiff's request to assign the lease or an interest thereof to an interested third-party.

### (ii) Delay in the approval of assignment of the lease

Plaintiff's breach of contract claims could otherwise be read to narrate a story where defendants took too long in giving its approval for the assignment of the lease to a third-party that was interested in acquiring plaintiff's business. **ECF No. 1** at 5-6. Specifically, plaintiff contends defendants "pretended to make [plaintiff] wait between 150 to 365 days for an answer." *Id.,* at n.10. Plaintiff further asserts that "while waiting… for [defendant's] consideration of… this qualified buyer" plaintiff lost the buyer because of the "unreasonable timeframe needed." *Id*.

However, nothing in the complaint states how long exactly (or approximately) did defendant made plaintiff "wait" for a determination as to the request to assign the lease. The complaint simply states that plaintiff announced to defendant the intention to assign the lease to a third-party since June 11, 2020 and that it submitted all documents required by July 8, 2020. Notably, however, the complaint was filed November 12, 2020. Thus, at the time of filing the complaint, defendants were still within the timeframe stipulated in the Lease Agreement (according to plaintiff "between 150 to 365 days") to make a determination as to plaintiff's proposed assignee. **ECF No. 1** at 6, n.10. Therefore, the Court cannot find any plausible breach of contract considering the fact that plaintiff admits that defendants did not extend their

consideration or withheld consent for the assignment beyond the timeline stipulated in the agreement.

More importantly, although plaintiff claims that the time it had to wait constitutes a breach of contract, plaintiff fails to identify which section or part of the Lease Agreement defendants breached. Plaintiff only made a general reference to Section 10.01 of the Lease Agreement. As discussed before, Section 10.01 contains the terms and conditions agreed upon by the parties for purposes of "[a]ssignment, [s]ubletting" the leased premises or interest therein. Even though plaintiff failed to pinpoint the contractual provision that was breached, the Court took it upon itself to read throughout the Section 10.01 in its entirety. The Court did not identify any provision which would be in conflict with defendants' alleged actions. To the contrary, as pointed out by defendants in their response and admitted by plaintiff, the Lease Agreement provides that the landlord has "between 150 to 265 days" to vet the candidate and make a decision to allow or deny the assignment of the lease. **ECF No. 15-1** at 37. Again, by the time of the filing of this action, defendants were still on time to give notice or authorization regarding plaintiff's request. *Id*.

Thus, plaintiff's allegations are contradicted by the documents that are central to its claims. "It is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *Clorox Co. Puerto Rico v. Proctor & Gamble Com. Co.*, 228 F.3d 24, 32 (1st Cir. 2000)(quoting *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 454 (7th Cir. 1998)). "[I]n determining whether

[plaintiff] has stated a claim for relief for [breach of contract], we read the allegations in the complaint in light of the full text of the [contract]." *Id*. Reading the text of the Lease Agreement, the Court finds that plaintiff's allegations miss the mark by a mile as they are openly contradicted by the Lease Agreement. Not only are the allegations inconsistent, but the unambiguous text of the Lease Agreement suggests that defendants acted according to its terms and conditions and, thus, cannot be held liable as a matter of law. *See Alt. Energy, Inc. v. St. Paul Fire and Marine Ins. Co.*, 267 F.3d 30, 36 (1st Cir. 2001)(finding that "plaintiffs' complaint fail[ed] to state a claim upon which relief could be granted" because the "agreement was unambiguous and released [defendant] from liability as a matter of law, appellee cannot be held liable by appellants for these claims.")

### (iii) Ab initio denial of authorization for assignment of lease

Contrary to the allegations discussed in the previous section which blame defendants for taking too long in vetting the "candidate-buyer," elsewhere in the complaint plaintiff asserts (without any explanation) that defendant "rejected *ab initio*" plaintiff's proposition regarding its "candidate-buyer" because plaintiff was in default. *Id*., at 6, 7. In other words, the complaint also contains allegations stating that, instead of taking too long, defendants rejected their proposed "candidate" immediately. Even if the Court overlooked the fact that the complaint's allegations are inconsistent and conclusory, the complaint still fails to plausibly state a claim in light of the unambiguous text of the Lease Agreement.

Plaintiff admits its default under the Lease Agreement.[8] To wit, the complaint states that due to the Covid-19 pandemic the Mall remained closed for several months. Once it reopened, plaintiff decided not to open its business to the public. **ECF No. 1** at 5, 6, 9. Plaintiff further concedes that defendants have demanded payment of arrears in "an amount equal to $75,400.00 in rent and utilities since April 2020." *Id.*, n.9.

The Lease Agreement states that "withholding or denial of… consent to any proposed transfer, assignment or subletting shall be deemed to be reasonable if" *inter alia*, "(viii) at the time Tenant requests Landlord's consent, Tenant is then in Default under this Lease or an event shall have occurred or state of facts exists which" or "(ix) Tenant has not opened for business to the public as of the date of the proposed transfer, assignment or subletting." **ECF No. 15-1** at 35. Accordingly, plaintiff's default under the Lease Agreement triggered defendants' right to deny or withhold consent to the assignment of the lease. Thus, even if it were true that defendants denied "ab initio" plaintiff's putative assignee of the lease, the complaint would fail--as a matter of law--to state a plausible claim for relief in light of the text of the Lease Agreement.

### B.     Damages under Puerto Rico tort law

Plaintiff's *ex delicto* claims fail to state a claim for relief. Plaintiff admits his "[t]ort… claim comes from [defendants'] wrongful conduct[,] [b]y intentionally preventing the acquisition of

---

[8] Notably, although it admits it failed to open its restaurant to the public and that it has not paid defendants under the Lease Agreement (in plaintiff's words: "non-payment"), plaintiff does not agree with the characterization of "default" solely because, in its view, the Covid-19 pandemic has turned its obligations under the Lease Agreement as "non-existent." **ECF No. 20** at 4. However, the fact remains that plaintiff failed to comply with the Lease Agreement while it was still valid and binding between the parties.

Vota Inc." **ECF No. 1** at 7. Moreover, plaintiff concedes that their claims under Article 1802, P.R. Laws Ann. tit. § 5141, seek compensation for the "resulting damages caused by [defendants] withholding consent… to a sale authorization," which "sent Vota Inc. downhill" to the point of filing "for bankruptcy" relief. *Id*. In other words, plaintiff tort claims hinge on defendants' alleged breach of contract.[9]

Under Puerto Rico law it is possible to assert a tort claim based on a conduct that is also a breach of contract. *Ramos Lozada v. Orientalist Rattan Furniture, Inc.*, 755 P.R. Offic. Trans., 130 P.R. Dec. 712 (1992). The aggrieved party may choose between the two (seek relief under tort law or under contract law, but not both) "provided that the three (3) requirements… are met." *Id.*, at 725. These requirements are

> 1. The event that caused the damage must be, at the same time, a breach of a contractual obligation and a violation of the general duty not to cause harm to another; that is, the breach of a duty, abstractedly from the contractual obligation that would arise even if it had not existed.
> 2. The person aggrieved as a result of the double (contractual and delictual) violation must be the same person, that is, the contractual creditor.
> [....]
> 3. Finally, the double violation must also have been committed by the same person, the contractual debtor [....] It is not a matter of claiming two liabilities in any case, but of choosing between actions that pursue the same end.

*Id.*, at 725.

Notably, Puerto Rico law requires that the tortious conduct "be, at the same time," a breach of contract. This *sine quo non* requirement is not present in the instant case. As explained

---

[9] *See* **ECF No. 1** at 5 whereby plaintiff labels the exact same conduct as defendants' "breach of contract."

before, the complaint fails to state a plausible claim for breach of contract. Thus, even assuming the complaints' nonconclusory-allegations are true, plaintiff cannot choose to continue the proceedings under tort law because defendants' performance under the Lease Agreement did not constitute a breach of contract in the first place. Accordingly, plaintiff's tort claims also fail to state a claim for relief as a matter of law.

Furthermore, there is yet another hurdle that plaintiff's allegations cannot overcome. As explained by the First Circuit, in order for a tort claim to be available for a party to an agreement, "an action for breach of contract only lies when the damage suffered arises exclusively as a consequence of the breach of an obligation specifically agreed upon, which damage would not occur without the existence of a contract." *Isla Nena Air Services, Inc. v. Cessna Aircraft Co.*, 449 F.3d 85, 90 (1st Cir. 2006)(citing *Ramos Lozada*). Plaintiff, "may not choose whether to proceed in contract or tort when the **damage suffered exclusively arises as a consequence of the breach of an obligation specifically agreed upon, which damage would not occur without the existence of a contract**." *Id.*, (emphasis added). In other words, the "general duty not to act negligently must arise out of conditions separate from the parties' contract. If a plaintiff's damages arise exclusively from a defendant's alleged breach of contract, the plaintiff does not have a separate cause of action for negligence." *Id.*, (citing *Nieves Domenech v. Dymax Corp.*, 952 F.Supp. 57, 65 (D.P.R.1996)). Here, there are no allegations whatsoever asserting conduct that "arise[s] out of conditions separate from the parties' contract." *Id*. To the contrary, plaintiff admits that the same

conduct is also the underpinning of its breach of contract claims. In this way, too, plaintiff's tort claims are also not plausible as a matter of law.

Likewise, even if the Court construed the complaint's allegations as standing for a claim for tortious interference (which is not clearly asserted), it would fail under Fed. R. Civ. P. 12(b)(6) and 8(a). A tortious interference claim, which under Puerto Rico law stems from the general tort statute codified at Article 1802 of the Civil Code, requires "(1) the existence of a contract between two or more parties, (2) interference with that contract by the defendant, (3) 'fault' on the defendant's part, (4) damage to the plaintiff, and (5) a nexus between the plaintiff's damage and the defendant's fault." *General Office Products Corp. v. A.M. Capen's Sons, Inc.*, 115 P.R. Offic. Trans. 727, 734, 1984 WL 270915 (1984). Aside from stating that Creolo Foods was an interested third-party, nothing in the complaint stands to allege the nature of its interest, whether there was a meeting of the minds between Creolo Foods and plaintiff, and what if anything happened between them. **ECF No. 1**.

In addition, the complaint fails to state a claim for tortious interfere inasmuch there is no "fault" by defendants. As explained before, the conduct underlying plaintiff's tortious interference claim (*i.e.* withholding consent and vetting Creolo Foods for approximately 128 days) is explicitly provided for in the Lease Agreement.

Finally, the Court notes that tortious interference "does not lie when what is affected is a mere expectancy or a profitable financial relationship." *Dolphin Int'l of P.R. v. Ryder Truck Lines*, 127 D.P.R. 869, 882-83 (1991), P.R. Offic. Trans., 1991 WL 735928. Because the Lease Agreement

specifically requires landlord's consent to the assignment of the lease, plaintiff cannot claim that it harbored more than a "mere expectancy" of the business with Creolo Food.

Accordingly, plaintiff's claims under Article 1802, including tortious interference, must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### C. *Rebus sic stantibus* and plaintiff's bankruptcy petition

As explained before, plaintiff admits its default under the Lease Agreement. However, plaintiff proffers that the default should be excused (or not considered as such) and that this Court should release plaintiff from the Lease Agreement because the Covid-19 pandemic "prevented or delayed fulfilling its obligations under the contract." **ECF No. 1** at 6. Specifically, plaintiff contends, the Covid-19 pandemic constitutes an "act of God," "force majeure" or circumstance "beyond control." **ECF No. 1** at n.8. In support, plaintiff claims the Lease Agreement's "force majeure" clause ("Section 2.05") is contrary to its "[rights] as a matter of law." *Id.*, at 7.

*Rebus sic stantibus* has been generally described as a "clause deemed implicit in contracts and that serves to adjust the debtor's obligation or rescind the contract when unforeseeable circumstances render strict compliance with the contract unfair." *López Morales v. Hosp. Hermanos Meléndez, Inc.*, 460 F. Supp.2d 288, 291 (D.P.R. 2006)(citing *Rodríguez–López v. Municipio*, 75 DPR 479, 491–492 (1953)). This doctrine, however, "is conditioned on the presence" of several elements. *Bautista Cayman Asset Co. v. Asociación de Miembros de la Policía de Puerto Rico*, 17-1167(CCC), 2020 WL 119688, at *2 (D.P.R. Jan. 9, 2020). In *Casera Foods, Inc., v. ELA*, 8 P.R. Offic.

Trans. 914, 1979 WL 5909991, (P.R. Dec. 1979), the Supreme Court of Puerto Rico established the following requirements

> (1) The unforeseeable event has arisen; (2) as a result thereof, there be an extraordinary difficulty or aggravation of the conditions surrounding the concession to be made by the debtor, so that it becomes significantly more costly for him to comply with his obligation; (3) the contract does not have a random nature or of pure speculation, with which the parties wanted to foresee in a certain way, the possibility of the event; (4) the parties' actions be free of deceit, since there are other mechanisms to attend that problem; (5) the contract is of successive tract or is related to a future moment, so that it has a certain duration; (6) an unforeseeable circumstance arise, it also being necessary that such a circumstance show some signs of permanence; and (7) the interested party move the court for relief.

*Id*. However, plaintiff is not entitled to such an extraordinary relief. Once again, the Lease Agreement provides in unambiguous terms that plaintiff agreed to continue with its payment obligations thereunder even in case of an event of "force majeure." Section 2.05 of the Lease Agreement provides that:

> [force majeure] [m]eans any of the following events: Acts of God, strikes, lock-outs, or labor difficulty, explosion, inability to procure labor, materials, or reasonable substitutes thereof, power failure(s), restrictive governmental laws or controls, judicial orders, enemy or hostile governmental action, riot or civil commotion, fire or other casualty, sabotage, accident, act of war, legal requirements, delays caused by the other party and any unforeseeable causes beyond the reasonable control of a party. Notwithstanding the foregoing, the occurrence of such events shall not excuse Tenant's obligation to pay Rent or any other charges due under this Lease nor excuse Tenant's inability to obtain funds.

**ECF No. 15-1** at 9-10. *See In re Chase Monarch Intl. Inc.*, 433 F. Supp. 3d 255, 260 (D.P.R. 2019), *reconsideration denied,* 453 F. Supp. 3d 484 (D.P.R. 2020)(denying *rebus sic stantibus* relief in connection with a commercial lease agreement and considering, among others, the "fact that one

of the clauses of the leasing agreement… related to natural disasters such as this one, forces this Court to conclude that Chase does not comply with the requirements.")

Second, even if the Court set aside the *force majeure* clause agreed upon by plaintiff almost 8 years ago, the Court notes that it was plaintiff's choice not to open the restaurant once the Mall reopened to the public.[10] Thus, plaintiff cannot seek refuge under an extraordinarily rare, equity doctrine to free itself from its contractual obligations. For years, the Puerto Rico Supreme Court has stated that the *rebus sic stantibus* may apply only as an exceptional remedy to extraordinary circumstances. *Casera Foods, Inc.*, at 857. This is definitely not the case.

## IV. Conclusion

Defendants' motion to dismiss at **ECF No. 15** is **GRANTED**. Plaintiff's complaint is dismissed pursuant to Fed. R. Civ. P. 12(b)(6). Clerk of Court shall enter judgment accordingly.

All pending motions are thus **MOOT**.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 30th day of September, 2021.

                                              **S/AIDA M. DELGADO-COLÓN**
                                              **United States District Judge**

---

[10] As explained before, plaintiff's debt to defendants, if any, or the application of equitable relief for that period of time, is a matter under the United States Bankruptcy Code which is under the jurisdiction of the United States Bankruptcy Court following plaintiff's voluntary filing of a petition prior to the filing of the instant complaint. **ECF No. 1-2**. This Court's findings and rulings herein are solely for purposes of dismissing plaintiff's claims against defendants and shall not be construed as a determination or ruling, or to interfere in any other way with the proceedings before the Bankruptcy Court.